McDONALD, J.,
concurring, which BARBERA, C.J., and HARRELL, J., join.
I concur in the Court’s judgment, but not in its opinion. When a judge on this Court concurs in the judgment only, it is helpful to explain why. Then the reader knows whether there is a substantive reason for that judge’s reticence and can assess whether that reason has any merit. So—here goes.
The Majority holds that Detective Brian Edwards should have been qualified by the trial court as an expert under-Maryland Rule 5-702 to testify as to the process for determining the communication path of the defendants’ cell phones and as to the importance of two particular cell towers. Majority op. at 684-85, 104 A.3d at 144. This holding appears based on a conclusion that Detective Edwards gave expert opinion testimony at trial. In my view, he did not.
At the trial, Detective Edwards essentially applied the telephone company’s key to the cell phone records of the defendants and determined that their cell phones had registered off certain cell phone towers in the vicinity of the crime during its commission and cover-up. As the trial judge stated, the process that Detective Edwards used to locate the cell towers associated with particular calls on the telephone company records “isn’t rocket science.” An analogy closer to *720 home may illustrate the point. A particular court may denominate a case with a designation like “Civ. No. S-14-0026.” One who has the key knows that this means that the particular action is a civil case (“Civ.No.”) assigned to Judge Smith (“S”) and was the 26th such case (“0026”) filed in the court in 2014 (“14”). One need not be a legal expert (¿a, a lawyer) to decipher the case designation, although perhaps a lawyer would be necessary to explain accurately the claims and defenses in the action.
Thus, in my view, Detective Edwards did not provide expert testimony and need not have been qualified as an expert to provide that testimony.
Why, then, do I concur in the judgment? In my view, there was a gap in the prosecution’s proof that undermined the probative value of Detective Edwards’ testimony. Information concerning the location of the cell phone towers associated with particular calls was only probative if it was evidence of where the defendants—or at least their phones—were located at the time of those calls. At the end of the trial the prosecutor argued that the fact that calls on the defendants’ cell phones registered off cell phone towers in close proximity to the crime scenes was corroboration for the testimony that the defendants had been present and participated in those crimes.
But there was no testimony at trial as to the significance of the location of a cell phone tower in relation to the location of the user of the phone. In some communication technologies, the path taken by a message over the communications infrastructure may vary and the intermediate route may reveal little about the location of the sender or receiver. For example, each time one obtains a copy of this opinion over the Internet, the transmission may take a very different route to the same destination.[1]
*721 Based on the technical discussion in the Majority opinion on cell phone technology[2] and some readily available technical sources,[3] it appears that the inference urged by the prosecutor was likely correct. But we do not want jurors checking readily available technical resources—or even judicial opinions—to obtain technical information concerning the significance of the evidence before them. A properly qualified expert—perhaps an electrical engineer or a communications engineer—was needed. It would likely not have been the most sophisticated testimony concerning wireless communications, but it is not something that can be said to be within the common knowledge of a lay juror. Without such testimony, the jury was left to speculate—perhaps reaching a correct conclusion, but still speculating—as to the significance of the cell towers’ location.
In the absence of expert testimony that would allow the jury to understand the significance of the towers’ location, the testimony concerning the location of the cell towers was not admissible under Maryland Rules 5^02 (only relevant evidence admissible) and 5-403 (even relevant evidence may be excluded if relevance is outweighed by confusion).
Chief Judge BARBERA and Judge HARRELL have advised that they join this opinion.
*722 [[Image here]]
*723 APPENDIX B
[[Image here]]
*724 APPENDIX C
[[Image here]]
APPENDIX C—Continued
Most people see the cell as the [solid-lined] hexagon, being defined by the tower in the center, with the antennae pointing in the directions indicated by the arrows. In reality, the cell is the [dotted-lined] hexagon, with the towers at the corners.... The confusion comes from not realizing that a cell is a geographic area, not a point. We use the terms ‘cell’ (the coverage area) and ‘cell site’ (the base station location) interchangeably, but they are not the same thing.
Tom Farley & Mark van der Hoek, Cellular Telephone Basics, Private Line (Jan. 1, 2006, 8:55 PM), http://www.privateline. com/mt_cellbasics/.

. See W. Stallings, Data and Computer Communications (10th ed.2014) (Chapter 19.1—"Routing in Packet-Switching Networks”) at 591-601.

. Majority op. at 692-94, 104 A.3d at 149-50.

. See, e.g., W. Stallings, Data and Computer Communications (10th ed. 2014) (Chapter 10.1-‘'Principles of Cellular Networks”) at 303-16.